**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PERTORIA, INC. | ) | Case No. _____ |
| an Ohio corporation | ) | |
| 219 E. Front St. | ) | Honorable _____ |
| P.O. Box 867 | ) | |
| Pemberville, Ohio 43450, | ) | **COMPLAINT WITH JURY DEMAND** |
| | ) | **ENDORSED HEREON** |
| Plaintiff, | ) | |
| | ) | Erik G. Chappell (0066043) |
| v. | ) | Benjamin Z. Heywood (0079590) |
| | ) | Lyden, Liebenthal & Chappell, Ltd. |
| BOWLING GREEN STATE UNIVERSITY | ) | 5470 Main Street, Suite 300 |
| Office of General Counsel | ) | Sylvania, Ohio 43560 |
| 308 McFall Center | ) | Telephone:  (419) 867-8900 |
| Bowling Green, Ohio 43403 | ) | Telefax:  (419) 867-8909 |
| | ) | Email: egc@lydenlaw.com |
| Defendant. | ) | bzh@lydenlaw.com |
| | ) | |
| | ) | William T. Maloney (0014662) |
| | ) | Maloney McHugh & Kolodgy, Ltd. |
| | ) | 20 North Saint Clair St. |
| | ) | Toledo, Ohio 43604 |
| | ) | Telephone:  (419) 241-5175 |
| | ) | Telefax:  (419) 725-2075 |
| | ) | Email:  wmaloney@mmklaw.net |
| | ) | *Attorneys for Plaintiff* |
| | ) | |

NOW COMES Plaintiff, Pertoria, Inc., by and through counsel, and for its Complaint against

Defendant, Bowling Green State University, states and avers as follows:

**PARTIES**

1.      Plaintiff, Pertoria, Inc. ("Pertoria"), is an Ohio corporation, in good standing, with a

principal place of business in Wood County, Ohio.

2.      Defendant, Bowling Green State University ("BGSU"), is a public university operated by the State of Ohio and located in Wood County, Ohio.

## JURISDICTION AND VENUE

3.      Pertoria brings this action for treble damages and injunctive relief for violations of the Federal antitrust laws and for violations of Ohio state law.  This Court has jurisdiction over this action pursuant to 15 U.S.C.A. § 15 and 26 and under the principles of supplemental jurisdiction, 28 U.S.C.A. § 1367.

4.      Venue is proper in the Northern District of Ohio, Western Division, under 15 U.S.C.A. § 15 and 28 U.S.C.A. § 1391.

## GENERAL ALLEGATIONS

5.      Pertoria owns and operates several Wendy's® franchised quick-service hamburger restaurants.  On October 17, 2001, Pertoria and BGSU entered into a written Operating Agreement and a written Lease, copies of which are attached hereto as **Exhibits A** and **B**, respectively.  The purpose of these agreements was to define the terms and conditions on which Pertoria would open and operate a Wendy's® restaurant (the "Restaurant") in BGSU's new Bowen-Thompson Student Union (the "Student Union").  The Operating Agreement and Lease, which had an initial term of five years terminating on May 12, 2007, have been extended and remain in effect through May 12, 2012.

6.      Acting in accordance with the parties' agreements, Pertoria invested approximately $480,000 to build out the Restaurant, which opened in the spring of 2002.  Pertoria just recently completed payments on the loan it obtained to finance this project.  In addition, Pertoria has continually paid rent to BGSU pursuant to the terms of the Lease.

–2–

7.      At all relevant times, BGSU has owned and operated University Dining Services, which provides a variety of on-campus dining options for BGSU's student population of approximately 20,000.  BGSU historically has offered a range of meal plans and, in fact, requires a significant number of its students to purchase a meal plan as part of BGSU's structured housing and dining program.  The meal plan fee is included with housing and tuition, and BGSU mandates participation by all first and second year students.  A large portion of the remaining students on campus also participate in the student dining plan, even though they are not required to do so.

8.      Through its ownership and operation of the University Dining Services, BGSU effectively maintains exclusive control over the on-campus dining options for approximately 20,000 students.  BGSU offers to its students, and in many cases requires its students to purchase, two separate and distinct products:  (a) undergraduate college education (the "Tying Product") and (b) student dining (the "Tied Product").  The sale of the Tying Product is conditioned on the purchase of the Tied Product.

9.      BGSU has sufficient market power in the market for the Tying Product to restrain trade in the market for the Tied Product and to effectively coerce BGSU students into purchasing the Tied Product.  As a consequence, there is a lessening of competition in the market for the Tied Product.

10.      Initially, in 2002, BGSU included the Restaurant within the meal plans it sold to its students.  In other words, BGSU permitted its students to spend their meal allowances with Pertoria interchangeably with BGSU's own cafeterias and restaurants.  At all relevant times, the Restaurant offered meals to BGSU students at a lower cost than those eateries that BGSU owns and operates. The comparative affordability of Pertoria's products provided BGSU students a substantial benefit.

−3−

11.     Pursuant to the terms of the Operating Agreement, Pertoria was required to, and did, install debit card readers meeting BGSU's specifications to enable students with authorized "BiG" charge and meal plan debit cards to pay for purchases from the Restaurant. Each month, BGSU paid Pertoria the amount of net charge or debit sales from the preceding month, less a 2% "administrative fee."

12.     During its first year of operation, the Restaurant generated approximately $1.4 million in annual gross sales for Pertoria. BGSU was made aware of Pertoria's revenues through Pertoria's compliance with the Operating Agreement's reporting requirements. At the same time, Pertoria is informed and believes that BGSU's University Dining Services lost approximately $500,000 during the first 18 months after opening the Student Union. Upon information and belief, BGSU attributed much of its loss to the success of the Restaurant and the additional costs incurred to staff university-owned eateries at the Student Union.

13.     In an effort to divert revenue away from the Restaurant and increase the profitability of University Dining Services, BGSU introduced a Flex Fund program, which capped the amount of meal plan dollars a student could spend at the Student Union at $75 per semester. This policy change negatively impacted the Restaurant's sales, which decreased by over $500,000 from the 2002/2003 to the 2003/2004 school years.

14.     However, certain measures taken in the 2003/2004 academic year brought BGSU's University Dining Services back to profitability by the fall of 2004. Experiencing renewed profitability, BGSU increased the allowed, per student Flex Fund dollars to $100 per semester in 2004/2005 and began allowing students to carry their Flex Fund dollars forward from the fall

–4–

semester to the spring.  Subsequently, BGSU increased Flex Fund dollars to $125 and permitted students to spend meal card money in the Student Union during summer months.

15.     As BGSU increased Flex Fund dollars within the meal plan, the Restaurant experienced a corresponding increase in sales.  BGSU, in turn, benefited from the increased sales, which yielded increased rent and "administrative fees."   The Restaurant generated approximately $1.7 million gross sales during the 2005/2006 through 2007/2008 academic years.

16.     Throughout the years in question, BGSU has itself owned and operated various restaurants and franchises at the Student Union.  Likewise, it continued operating the university-owned student cafeterias around campus.  Each time BGSU determined that the Restaurant was receiving too many student dining dollars at the expense of University Dining Services or other BGSU concept restaurants or eating establishments, BGSU changed the rules in an effort to divert revenues from the Restaurant.

17.     In 2007, BGSU required Pertoria to install new card readers for Flex Fund dollars at the Restaurant.  Pertoria incurred this expense and renewed the Operating Agreement and Lease with the understanding and belief that the Restaurant would continue to receive student dining dollars through the remaining term of the parties' agreements, i.e., through May of 2012.

18.     From 2001 through 2008, BGSU managed and controlled University Dining Services. In late 2008 or early 2009, BGSU retained the services of an outside food service management company to manage its University Dining Services.  Pertoria is informed and believes that BGSU's food services are now being run by Chartwells USA, a subsidiary or division of international corporate conglomerate Compass Group PLC.  Pertoria also is informed and believes that Compass Group PLC or one of its subsidiaries is, itself, a franchisee of Wendy's® restaurants.

19.     By letter dated May 1, 2009, BGSU abruptly informed Pertoria that, beginning July 1, 2009, Flex Funds would no longer be available for use at the Restaurant.  Pertoria formally requested that BGSU reconsider this decision, but BGSU refused to change its position.

20.     In the summer of 2009, BGSU announced to its student body, faculty, and staff the new "Falcon Dollars" concept, which is a declining balance account much like its predecessor, the Flex Fund plan.  BGSU distributed materials in a direct e-mail marketing effort and continues to publish online and print materials, all of which suggest Falcon Dollars may be used at any on-campus dining location, including the Restaurant.

21.     To illustrate, BGSU's "dineoncampus" web pages state:  "This plan provides the most flexibility to eat anywhere on campus including the Student Union eateries whenever you want…A great value for the student who wants the ability to eat anywhere on campus including the Student Union eateries a few times a week."  Copies of the referenced web pages are attached hereto as **Exhibit C**.

22.     In fact, however, BGSU imposed a contractual restriction on the use of Falcon Dollars so that Falcon Dollars may be used to pay for purchases at every eatery in the Student Union except for the Restaurant.  BGSU communicates this fact to its students and other readers through fine print in a footnote on its marketing materials.  It fails to mention, however, that the Restaurant is the only on-campus eatery that BGSU does not own or operate.

23.     BGSU has led students and their parents to believe that Falcon Dollars may be used to pay for purchases at any Student Union eatery, including the Restaurant.  Pertoria is informed and believes that, in addition to disseminating confusing and misleading electronic and print materials, BGSU representatives told students at orientation that the meal plan extends to the Restaurant.

–6–

These actions, materials, and statements have caused confusion and misunderstanding among the university student population, Pertoria's primary customer base at the Restaurant.

24.     Students in today's university setting rarely carry cash and, when visiting the Student Union, rely primarily on Falcon Dollars for their purchases.  Students have become upset with the Restaurant because it cannot honor BGSU's representations and commitments.  The Restaurant cannot accept Falcon Dollars for Wendy's® cuisine, and Pertoria's reputation has been harmed as a consequence.

25.     Today, the Restaurant is the only remaining on-campus food vendor owned by anyone other than BGSU.  Seeking an anti-competitive business advantage, BGSU has effectively squeezed the Restaurant out of the on-campus dining market.  In so doing, BGSU has caused Pertoria a potentially devastating loss in revenue.  Restaurant sales are currently down over 50% from the same period a year ago.  To continue operating at these levels, Pertoria has been forced to cut the Restaurant's staff by two-thirds.  Projecting the sales losses forward, Pertoria anticipates a $1 million decrease in annual sales from the Restaurant.

26.     Meanwhile, because they cannot use meal plan dollars at the Restaurant, BGSU's students are forced to pay higher, noncompetitive prices for meals sold by BGSU eateries.  BGSU's exploitation of its tying arrangement with its students has thereby adversely affected competition.

27.     Pertoria has reason to believe that BGSU desires to replace the Restaurant in the Student Union with its own franchised eatery or to permit Chartwells/Compass Group to operate a Wendy's® franchise in Pertoria's place.

28.     Upon information and belief, BGSU has engaged in similar unlawful, monopolistic, deceptive, exploitative and unfairly competitive business practices in the past, causing similar

antitrust injury to BGSU students and other on and off campus businesses. Specifically, but not by way of limitation, Pertoria is informed and believes that, in order to avoid paying franchise royalties, BGSU breached its franchise agreements with Freshens and Sara Lee, then proceeded to operate their own versions of these franchises under different names.

## COUNT I
## MONOPOLIZATION, ATTEMPT TO MONOPOLIZE (15 U.S.C.A. § 2)

29.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

30.     BGSU has monopolized the market for on-campus dining options on the campus of Bowling Green State University (the "Relevant Market") in that it has the power, and is exercising the power, to exclude competition in the Relevant Market, by Pertoria and others.

31.     BGSU has acquired, exercised, and maintained its monopoly power willfully and intentionally by the acts set forth above.

32.     Alternatively, BGSU has intentionally and willfully attempted to monopolize the Relevant Market by way of the aforementioned acts.

33.     There is a dangerous probability that BGSU's attempts to monopolize the Relevant Market will be successful.

34.     BGSU's illegal monopolistic conduct is in commerce and has a substantial effect on interstate commerce.

35.     As a direct and proximate result of BGSU's illegal monopolistic conduct, Pertoria's business has suffered actual injury and damages, and will continue to suffer ongoing injury and damages, in an amount to be proven at trial.

36.     In addition, university students, the ultimate consumers of the goods and services in question, have been harmed by, or are faced with the threat of harm from, BGSU's anticompetitive conduct, insofar as BGSU has restricted options and thereby injured competition in the Relevant Market.

37.     Accordingly, Pertoria is entitled to an award of compensatory damages, statutory treble damages, costs and expenses, including attorneys' fees, pursuant to Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

38.     In addition, Pertoria is entitled to injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C.A. § 16.

## COUNT II
## UNREASONABLE RESTRAINT OF TRADE (15 U.S.C.A. § 1)

39.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

40.     BGSU holds a dominant market share in on-campus dining at the University, which its purposeful anticompetitive conduct has created and will perpetuate into the future.

41.     BGSU has exploited its contractual relationship with its students in such a manner as to unreasonably and substantially restrain trade and commerce in the Relevant Market.

42.     BGSU's contractual relationship with its students is a *per se* unlawful tying arrangement under the Federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

43.     As a direct and proximate result of BGSU's unreasonable restraint of trade, Pertoria's business has suffered actual injury and damages, and will continue to suffer ongoing injury and damages, in an amount to be proven at trial.

44.     BGSU's unlawful conduct has harmed, and will continue to harm, competition.

45.     University students, the purchasers of the Tied Product, have been harmed by, or are faced with the threat of harm from, BGSU's anticompetitive conduct, insofar as BGSU has restricted options, injured competition, and forced noncompetitive pricing upon its students.

46.     BGSU's unlawful contracts and conduct are in commerce and have a substantial effect on interstate commerce.

47.     Accordingly, Pertoria is entitled to an award of compensatory damages, statutory treble damages, costs and expenses, including attorneys' fees, pursuant to Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

48.     In addition, Pertoria is entitled to injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C.A. § 16.

## COUNT III
## VIOLATION OF THE OHIO VALENTINE ACT
## (OHIO REV. CODE 1331.01, et seq.)

49.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

50.     BGSU entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of the Ohio Valentine Act, R.C. 1331.01, et seq.

51.     BGSU's contract, conspiracy or combination constitutes a *per se* unlawful tying arrangement under the Ohio Valentine Act.

52.     BGSU's contract, conspiracy or combination constitutes an unlawful "Trust," as that term is defined in R.C. 1331.01, insofar as it was formed to (a) create or carry out restrictions in

trade or commerce; (b) increase the price of food on the University campus; and (c) prevent competition in the market for on-campus dining.

53.     BGSU's contract, conspiracy or combination constitutes a conspiracy against trade under R.C. 1331.04.

54.     BGSU's contract, conspiracy or combination violates the prohibition against combination to control the price, supply or competition in the sale of food under R.C. 1331.05.

55.     BGSU has monopolized, or attempted to monopolize, the market for on-campus dining in violation of the Ohio Valentine Act.

56.     BGSU's contract, conspiracy or combination occurred in or affected Ohio commerce.

57.     BGSU's contract, conspiracy or combination has harmed, and will continue to harm, competition.

58.     BGSU's contractual restriction on the use of Falcon Dollars at the Restaurant is void under R.C. 1331.06.

59.     As a direct and proximate result of BGSU's unreasonable restraint of trade, Pertoria's business has suffered actual injury and damages, and will continue to suffer ongoing injury and damages, in an amount to be proven at trial.

60.     University students have been harmed by, or are faced with the threat of harm from, BGSU's anticompetitive conduct, insofar as BGSU has restricted options, injured competition, and forced noncompetitive pricing upon its students.

61.     Accordingly, Pertoria is entitled to declaratory and injunctive relief, treble damages and reimbursement of attorneys' fees in accordance with the provisions of the Ohio Valentine Act.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

–11–

62.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

63.     Pertoria has business relationships with current students of Bowling Green State University and other current visitors to the Student Union.

64.     Pertoria has prospective business relationships with future students of Bowling Green State University and other future visitors to the Student Union.

65.     BGSU has actual knowledge of these existing and prospective business relationships.

66.     BGSU has acted intentionally, improperly, and maliciously in interfering with and causing the termination of Pertoria's existing and prospective business relationships.

67.     BGSU lacks privilege or justification for its interference.

68.     Pertoria has suffered actual damages as a direct and proximate result of BGSU's tortious interference.

69.     Accordingly, Pertoria is entitled under Ohio law to injunctive relief, compensatory damages, punitive damages, and reimbursement of attorneys' fees.

<u>**COUNT V**</u>
<u>**BREACH OF CONTRACT AND**</u>
<u>**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**</u>

70.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

71.     The Operating Agreement and Lease constitute valid, enforceable contracts between Pertoria and BGSU.

72.    The fundamental purpose of the Operating Agreement and Lease is to enable Pertoria to operate the Restaurant, the sustainability of which depends largely on sales to students through the university meal plan.

73.    There is an implied covenant of good faith and fair dealing in the Operating Agreement and Lease.

74.    Pertoria has fully and faithfully observed and performed all covenants, agreements, and conditions of the Operating Agreement and Lease.

75.    BGSU has breached the Operating Agreement, the Lease, and the covenant of good faith and fair dealing by intentionally and maliciously undermining the purpose of the Operating Agreement and Lease and by depriving Pertoria of the opportunity to realize the benefit of the parties' contracts.

76.    Pertoria has suffered damages as a result of BGSU's breach of the Operating Agreement, Lease, and implied covenant of good faith and fair dealing.

77.    Accordingly, Pertoria is entitled to an award of all applicable damages under Ohio contract law.

### COUNT VI
### BREACH OF THE COVENANT OF QUIET ENJOYMENT

78.    Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

79.    The Lease is a valid, enforceable contract between Pertoria and BGSU.

80.    The fundamental purpose of the Lease is to enable Pertoria to operate the Restaurant, the sustainability of which depends largely on sales to students through the university meal plan.

81.     Pertoria has fully and faithfully observed and performed all covenants, agreements, and conditions of the Lease.

82.     BGSU expressly covenanted in the Lease that it would do nothing to disturb, hinder, or impair Pertoria's quiet enjoyment and beneficial use of the Leased Space, as that term is defined in the Lease.

83.     There is also an implied covenant of quiet enjoyment in the Lease under Ohio law.

84.     BGSU has breached this covenant by obstructing, interfering with, and taking away from Pertoria in a substantial degree the beneficial use of the Leased Space.

85.     BGSU has undertaken these actions with malice.

86.     As a direct and proximate result of BGSU's breach of the Lease and implied covenant of quiet enjoyment, Pertoria has suffered, and will continue to suffer, actual damages.

87.     Accordingly, Pertoria is entitled to injunctive relief, an award of actual damages, which will continue to accrue through the remaining term of the Lease, punitive damages, and reimbursement of attorneys' fees.

## COUNT VII
## DECEPTIVE TRADE PRACTICES (OHIO REVISED CODE §§ 4165.01 et seq.)

88.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

89.     BGSU has represented that the Restaurant and Falcon Dollars have sponsorship, approval, characteristics, uses, and benefits that they do not have.

90.     BGSU has caused a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, or certification the Restaurant and Falcon Dollars.

91.     BGSU has caused a likelihood of confusion or misunderstanding as to the Restaurant's affiliation, connection, or association with, or certification by, BGSU.

92.     BGSU has engaged in these deceptive trade practices willfully and maliciously, with the intent to harm Pertoria.

93.     Pertoria has suffered actual damages as a direct and proximate result of the deceptive trade practices enumerated above.

94.     Accordingly, Pertoria is entitled to an award of damages, injunctive relief, and attorneys' fees pursuant to Ohio's Deceptive Trade Practices Act, O.R.C. 4165.01 et seq.

## COUNT VIII
## UNFAIR AND UNLAWFUL COMPETITION

95.     Plaintiff restates and incorporates herein the preceding paragraphs and averments of its Complaint.

96.     BGSU has engaged willfully and maliciously in unfair and unlawful competition with Pertoria.

97.     Pertoria has suffered and will continue to suffer damages as a direct and proximate result of BGSU's unfair and unlawful competitive conduct.

98.     Accordingly, Pertoria is entitled to an award of damages, injunctive relief, punitive damages and attorneys' fees.

WHEREFORE, Plaintiff, Pertoria, Inc., respectfully requests judgment against Defendant, Bowling Green State University, to include the following relief:

(a)   Preliminary and permanent injunctive relief prohibiting BGSU from continuing or engaging in illegal, monopolistic activities with respect to the Relevant Market, as defined above.

(b)   Preliminary and permanent injunctive relief requiring BGSU to reinstate use of student meal plan dollars at Pertoria, Inc.'s Wendy's® franchised restaurant in the Student Union and to require BGSU to permit its students to use Falcon Dollars to pay for purchase at Pertoria, Inc.'s Wendy's® franchised restaurant through the remaining balance of the term of the Operating Agreement and Lease.

(c)   Preliminary and permanent injunctive relief requiring BGSU to immediately cease and desist all deceptive trade practices respecting Pertoria, Inc.'s Wendy's® franchised restaurant and to retract all false and deceptive advertising and statements.

(d)   A judicial declaration that BGSU's restriction on the use of Falcon Dollars is void.

(e)   An award of compensatory damages in an amount to be proven at Trial.

(f)   An award of statutory treble damages under the Federal and State antitrust laws.

(g)   An award of punitive damages for BGSU's intentional and malicious conduct.

(h)   Reimbursement of all costs and expenses incurred in this action, including attorneys' fees.

Respectfully submitted,

*/s/ Erik G. Chappell*
Erik G. Chappell (0066043)
Benjamin Z. Heywood (0079590)
Lyden, Liebenthal & Chappell, Ltd.
5470 Main St., Suite 300
Sylvania, Ohio 43560
Telephone:  (419) 867-8900
Telefax:  (419) 867-8909
egc@lydenlaw.com, bzh@lydenlaw.com

and

William T. Maloney (0014662)

–16–

Maloney McHugh & Kolodgy, Ltd.
20 North Saint Clair St.
Toledo, Ohio 43604
Telephone:  (419) 241-5175
Telefax:  (419) 725-2075
Email:  wmaloney@mmklaw.net
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.


*/s/ Erik G. Chappell*
Erik G. Chappell
Benjamin Z. Heywood
Attorneys for Plaintiff


November 2, 2009
Date